# United States District Court
## For the Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| JULIE R. CHRISMAN, | ) ) ) ) | Civil No. 5:11cv00090 |
| *Plaintiff,* | ) ) | **REPORT AND** |
| v. | ) ) ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security | ) ) ) ) | By: James G. Welsh U. S. Magistrate Judge |
| *Defendant* | ) ) ) |  |

The plaintiff, Julie R. Chrisman, brings this civil action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her application for Supplemental Security Income ("SSI") [1] under Title XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 1381 *et seq*. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The record shows that the plaintiff protectively filed her claim for SSI on November 5, 2007. [2] (R.9,148). Therein, she alleged that she became disabled beginning November 1, 2004 [3] due to "panic attacks, blood clots [in her] left leg, ankylosing spondylit *(sic)*, bipolar, acid reflux, [and] 9 blood clots in [her] left leg." (R.9,153). Her claim was denied initially, on

---

[1] The plaintiff's period of eligibility for SSI extends through the date of the ALJ's April 28, 2010 decision.

[2] Although SSI is not payable prior to the month following the month in which her application was filed, the ALJ represented in his decision that he had considered the plaintiff's complete medical record in accordance with 20 C.F.R. § 416.912(d). (R.9).

[3] At the hearing the plaintiff amended her alleged onset date to March 7, 2005. (R.9).

reconsideration, and for a third time following an administrative hearing by written decision dated April 28, 2010. (R.9-21,22-58,63-66,68-69,72-74,78-84,86). After unsuccessfully seeking Appeals Council review (R.1-5,221-223), the unfavorable decision of the Administrative Law Judge ("ALJ") now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his Answer (Dkt. #5) to the plaintiff's Complaint (Dkt. #1), the Commissioner has filed a certified copy of the Administrative Record ("R.") (Dkt. #7), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By standing order this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and the court has heard the views of counsel.

### I. Summary Recommendation

Contending that the ALJ failed to give the requisite decisional consideration and weight to her medical and treating source opinions, the plaintiff argues on appeal that the Commissioner's unfavorable disability determination in her case is not supported by substantial evidence. (Dkt. #9, pp. 2-3). For the reasons that follow, it is concluded the ALJ properly weighed the medical evidence in determining that the plaintiff retained the functional capacity to adjust to other work that exists in significant numbers in the national economy and substantial evidence also exists in the record to support the ALJs non-disability determination.

## II. Standard of Review

The court's review in this case is limited to determining whether the Commissioner's factual findings are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2$^d$ at 642). The court is "not at liberty to re-weigh the evidence . . . or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (internal quotation marks omitted). While this standard is high, if the ALJ's determination is not supported by substantial evidence or if he has made an error of law, the district court is equally obligated to reverse the decision. *Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987).

## III. Evidence Summary

### Work History and Vocational Profile

At the time the plaintiff alleges that her disability began, she was forty years of age;[4] she had a high school education, and her past relevant employment included jobs as a cashier and as a presser in a dry cleaning establishment. (R.20,48,148,154,159). Exertionally, both of these

---

[4] At this age the plaintiff is classified as a "younger person," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. § 416.920(c).

3

jobs are classified as light and unskilled, and it was the ALJ's determination that the plaintiff lacked the residual functional ability to perform any of her past relevant work. (R.20-21,50).

## Medical History

The plaintiff's medical records show that she is 5' 4" tall, has weighed as much as 204 lbs.,[5] and as identified by the ALJ she has the following *severe* impairments: obesity, degenerative disc disease,[6] osteoarthritis, chronic inflammatory joint arthritis (ankylosing spondylitis),[7][8][9] a panic disorder,[10] a bipolar disorder,[11] and a recurrent blood clotting disorder with a history of deep vein thrombosis and superficial thombophlebitis.[12][13] (R.11).

---

[5] This weight and height reflect a body mass index of 30-35. (R.,11; *see* R.529).

[6] A lumbosacral spine study on 11/04/2008 demonstrated "minimal" disc space narrowing at L5-S1 and no other spinal abnormality. (R.927). X-rays taken one year later (1/20/2009) similarly showed a "normal lumbar spine, sacrum and coccyx." (R.933-934)

[7] By letter dated 01/24/2008, the plaintiff's treating physician, Wael Jarjour, M.D., reported that he had been following her ankylosing spondylitis "for a number of years" and that the nature of his care did not provide a basis to make an assessment of her functional abilities. (R.441-442,859-860).

[8] A comparison pelvic MRI dated 03/11/2007 demonstrated "unchanged" chronic inflammation of the left sacroiliac joint with mild marrow edema since an earlier University of Virginia Health System dated 01/05/2004; similarly it showed her lower lumbar disc disease to be similarly "unchanged" during this three-year period. (R.451-452).

[9] Pharmacologic treatment was primarily with methotrexate, a folic acid analogue. (R.1341,1398).

[10] Pharmacologic treatment was primarily with lithium. (R.1398).

[11] Pharmacologic treatment was primarily with methadone. (R.1289).

[12] Left lower extremity ultrasound on 11/06/2007 disclosed "no deep vein thrombosis or other significant deep vein abnormality" and only a "superficial vein thrombus [on the] medial side of the knee." (R.386; *see* R.433,466). A bilateral lower extremity venous duplex examination at UVa Medical Center on 12/12/2008 also demonstrated bilaterally no deep venous thrombosis. (R.1412-1413).

[13] A 7-day hospitalization at UVa Medical Center in June 2008 for treatment of bilateral pulmonary emboli due to left lower extremity deep venous thrombosis. (R.1282 *et seq.*). Treatment was primarily the pharmacologic use of warfarin (Coumadin). (R.1315,1389-1390).

Her voluminous medical records document a multi-year history of conservative treatment, primarily pharmacological, for these several *severe* [14] conditions beginning in March 2004 and continuing to January 12, 2010. (*See e.g.*, R.252-254,256,266,285-292,299-304,305-307,348,351-367,369,373-375,411,416-430,434-440,451-454,470,476-496,510-526,534,617, 630-632,696-698,711,727,734,737,759,774-777,782,797-800,815,825,831,838,1151-1185,1173, 1389-1390,1402-1407,1409). Most relevant to the plaintiff's disability claim, during this period are the treatment records of her three primary treating sources: University of Virginia Medical Center ("UVaMC") during the years 2007-2009; David Lee, M.D., her primary care physician, during the years 2004-2010; and Valley Behavioral Medicine during the years 2006-2008. At UVaMC she received treatment for her joint inflammation condition, bilateral pulmonary emboli due to left lower extremity deep venous thrombosis, superficial thrombophlebitis, lower extremity pain and anxiety. (R.282-333,413-454,856-887,1282 *et seq.*). Through Dr. Lee's office she received primary medical care for her superficial thrombophebitis, lower extremity pain, anxiety, and for general medication management. (R.369-376.459-465,922-925,1154-1254). And on referral by Dr. Lee, through Valley Behavioral Health, the plaintiff's various mental health issues (bipolar disorder, anxiety and depression) were assessed and treated. [15] (R.337-367,508-546,).

Primarily through Page Memorial Hospital, Hess Orthopedic and Dr. Lee, during the same nearly six-year period, she was also treated conservatively for a number of other more

---

[14] *See* 20 C.F.R. §416.921.
[15] When initially assessed on April 6, 2007, the plaintiff exhibited a moderately depressed mood and some cognitive dysfunction, but her thinking was found to be logical, coherent, her judgment to be adequate, her abstract thinking to be intact, and her current functioning to be 51 on the GAF scale. (R.355-362).

5

transient medical problems, including a right ankle fracture and related ankle pain, [16] biliary colic, gynecological examinations, right arm sebaceous cyst, nerves, nausea, hot and cold flashes, epigastric pain, "uneventful elective" gallbladder surgery, flu shot, infected left thigh blood clot, tongue pain, left carpal tunnel release, chest pain, neck pain, a fall-related right leg injury with attendant leg and foot pain, right carpal tunnel release, minor left eye injury from a cigarette ash, anxiety, pneumonia, low back strain, back pain, right shoulder pain following a motor vehicle accident in July 2009, [17] heavy menses, right flank pain, shortness of breath, ankle strain, diarrhea, facial pain, sinusitis and gastrointestinal distress. (R.235-250,255,257-264,268-277,281,293-294,297-298,347,371,381,385,387,396,398,400,402-403,408,415,432,466,468,559, 569-581,587-596,601,613,617-627,644-645,648,655-678,700-701,709-710,714-719,723,726, 745-746,750,753,760-764,773,807-809,812,836,853,865-870,886,935,939-940,950-952,957,961, 965-966,977-979,990-991,998-1001,1016,1024-1025,1033,1243-1251,1266,1402-1407,1409, 1452-1454).

Testifying at the administrative hearing in support of her claim, the plaintiff stated that "half of [her] spine [was] locked up," that she has "some nerves broke [*sic*] in her back," that her pain level is "ten" on scale of 1 to 10, that her anti-anxiety medication made her "sleepy" during the day, that she had been given "chemo shots" for her back, and that she had difficulty sleeping at night due to her acute back pain. (R.31-32,34-36,44). In contrast, the record shows that she is able to ambulate without the use of any assistive device; it shows that her back condition requires

---

[16] An emergency room physical examination by R. David Lee, M.D. on 10/25/2008 disclosed no calf or thigh swelling, and "certainly no clinical or laboratory evidence of a thromboembolic event." (R.1014-1015).

[17] A physical examination one week following this accident demonstrated the plaintiff to be in no acute distress, to exhibit no spinal tenderness, to exhibit no evidence of trauma, to have full range of motion, to exhibit no neurologic abnormality, to have no musculoskeletal tenderness, to exhibit a "normal" mood and affect, and to have only "minimal tenderness" in the region of the tip of the right scapula. (R.939)

6

no use of a back brace or other orthopedic device, and it contains no objective documentation that the plaintiff has experienced any significant sleep difficulties [18] or any functionally significant adverse medication-related side effects. (R.31-32; *see* R.252-281,412-454,459,473-474,484-486,548-834,865,855-871, 927-1153).

**Opinion Evidence**

In his responses to a questionnaire dated January 8, 2008, Dr. Lee reported that the plaintiff's medication regime included a bipolar medication (Lithium), a panic disorder medication (Klonopin), a pain reliever (Methadone), an arthritis medication (Methotrexate), a nutritional aid (folic acid), and an antacid (Ranitidine). (R.459). He stated that her chronic low back pain interfered with her ability to walk, that she tired easily, that the Klonopin and Methadone made her drowsy, that she experienced pain both when resting and when engaged in any type of physical activity, that bending and stooping were "anatomically impossible," that she could walk no more than 100 feet without stopping, that she could sit for no more than two hours and stand for no more than one hour during a normal work day, and that she could frequently lift no more than one pound. (R.458-462). In Dr. Lee's opinion, the plaintiff had been unable to engage in any type of gainful activity since September 14, 2004. (R.461).

In his responses to a second questionnaire dated two years later, Dr. Lee reported that the plaintiff was also experiencing easy bleeding (presumably related to prescription use of warfarin, an anticoagulant) and a decreased range of back motion. (R.922-923). Once again he opined that it was "physically impossible" for her to bend or stoop; once again he opined that the plaintiff

---
[18] An entry in the plaintiff's UVaMC medical record dated 07/07/2008 records a complaint by the plaintiff about difficulty sleeping; however, she attributed this problem "to her daughter's recent surgery." (R.865)

7

was functionally limited to an exertional level less than required for sedentary work, and once again he opined that she was permanently disabled. (R.923-925).

In a medical source statement dated February 8, 2008, Raymond Alderfer, M.D., the plaintiff treating psychiatrist at Valley Behavioral Health, reported that due to her "unstable moods, racing thoughts and poor concentration, the plaintiff exhibited "moderate[ly]" limited abilities in the areas of understanding and remembering simple instructions, of carrying-out such instructions, of making simple work-related judgments and decisions, and of interacting appropriately with co-workers. (R.473-474). In Dr. Alderfer's view, the plaintiff was more severely (*i.e.* "marked[ly]") limited in the areas of understanding and carrying-out detailed instructions, of interacting appropriately with the public and supervisors, and of responding appropriately to changes in a routine work setting. (*Id*.).

Based on his review of the record in August 2008, R. S. Kardian, M.D., a state agency medical reviewer, concluded that the plaintiff retained the functional ability to perform work on a regular basis at a light exertional level. (R.889-896). In reaching this conclusion, Dr. Kardian stated that he took into account Dr. Lee's opinion, but that his contrary conclusion was based to a significant degree on the plaintiff's reported range of daily activities and on her medical history.

One month later based on a separate review of the record, Yvonne Evans, Ph.D., a state agency psychologist, concluded that from a mental health standpoint the plaintiff retained the functional ability to perform competitive work on a regular basis. (R.898-916). In reaching her non-disability conclusion, she stated that she considered Dr. Alderfer's opinion, but she came to

8

Case 5:11-cv-00090-MFU-JGW   Document 16   Filed 12/11/12   Page 8 of 16   Pageid#: 1762

a contrary conclusion for several reasons, including *inter alia* the fact that the plaintiff's condition did not meet either listing 12.04 for affective disorders or listing 12.06 for anxiety-related disorders and the fact that her mental health history did not support the disabling degree of mental limitation reported by Dr. Alderfer. (*Id.*).

Additionally, the record contains vocational testimony given by James Ryan, Ed.D., during the administrative hearing. (R,48-52,137-139). In addition to providing vocational profile information, Dr. Ryan identified jobs that fit the ALJ's hypothetical residual functional capacity questions. In response to the ALJ's hypothetical question, quality control work, sorter and grader, and packaging worker were identified by this witness as representative of the type of jobs that could be performed by an individual with the plaintiff's vocational profile, with an ability to perform only unskilled, entry-level work, with an ability only to understand, remember and carry-out simple instruction, with an ability to sit for six hours during a normal work day provided there was an ability to stand for a brief period each hour, with an ability otherwise to stand, lift and carry at a light exertional level, with no ability to handle money as an essential job feature, with an ability only occasionally to bend at the waist, with no ability to push or pull, an ability only to work on level surfaces, and with no ability to perform work around hazardous or moving machinery. (R,49-50).

### IV.    Analysis

On appeal the plaintiff's principle claim of reversible error is that the ALJ erred at sequential evaluation step three by concluding that her condition neither met nor medically equaled listing 12.04 for affective disorders. (Dkt. nos. 9 pp 2-3, 9-1 and 9-2). As support for

this claim of error, the plaintiff expressly relies on Dr. Alderfer's medical source statement dated in February 2008 (R.473-474), Dr. Lee's medical source statement dated January 14, 2010 (R.921-925), and the vocational witness' statement that an individual with the limitations outlined by Drs. Alderfer and Lee would be disabled (R.52). Separately, the plaintiff also argues that the ALJ, in effect, totally ignored her medical evidence and testimony concerning the debilitating nature of her condition.

### A.

To the extent, if any, that the plaintiff's central argument suggests that the ALJ was decisionally obligated to accept either Dr. Lee's or Dr. Alderfer's treating source opinions on the basis of their express or implied conclusory opinion of disability, this argument is totally without merit. Conclusory opinions are entitled to no deference because they invade the province of the Commissioner to make the ultimate disability determination. 20 C.F.R. §416.927(e)(1); SSR 96-5p; *see Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) (statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner).

### B.

To the extent her central argument of ALJ error is a claim that the ALJ was decisionally obligated to give controlling weight to the residual functional capacity assessments of Drs. Alderfer and Lee, this argument fails for the reason that the ALJ is not required to accept opinions from treating physicians in every situation. Such opinions must be given controlling weight only if they are: (1) well-supported by medically-acceptable clinical and laboratory

10

diagnostic techniques; and (2) are not inconsistent with other substantial evidence in the record. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Where the medical opinions in the record are inconsistent either internally with each other or with other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2)-(d).

In making this evaluation in the instant case, the ALJ took notice of the fact that several of the "marked" limitations identified by Dr. Alderfer in his February 2008 assessment were inconsistent with his own examination findings and progress notes, and the ALJ cited in support of this determination the fact that her moderate to mild symptoms were consistently managed on an out-patient basis. (R.19). Moreover, a review of the record independently supports and is consistent with this determination. In his February 2008 functional assessment, Dr. Alderfer himself assessed the plaintiff to be functioning at a moderate GAF level. And his progress notes, likewise, show that she consistently demonstrated logical and coherent thought processes, good/fair affect, and a good/stable mood. (R.353,,478-480,482). Thus, the record more than adequately demonstrates that the ALJ's determination to give Dr. Alderfer's assessment "some but not controlling weight" (R.19) is well-supported by substantial evidence.

Likewise, the ALJ took notice of the more extreme functional limitations outlined by Dr. Lee, and he also took notice of their inconsistency with the "longitudinal evidence in the record," including the doctor's various examination findings. (R.19). Moreover, from a review of the record Dr. Lee's list of extreme limitations is inconsistent with the state agency medical reviewer's less-than-disabling assessment, to which the ALJ gave "great weight." (*Id*.). *See* SSR

11

96-6p. Additionally, Dr. Lee's limitations are unsupported by any medically acceptable clinical and laboratory diagnostic techniques. And they are patently inconsistent with Dr. Jarjour's UVaMC progress notes that show no significant neurological or musculoskeletal abnormalities. (R.416,419,421,424,431,862,876-877). Thus, the ALJ's determination to give Dr. Lee's assessment "little weight" (R.19) is also well-supported by substantial evidence.

## C.

As part of the court's consideration of this argument by the plaintiff, it merits mention that the plaintiff's central contention on appeal implies that the ALJ improperly weighed the treating source opinion evidence. This court, however, must uphold the Commissioner's final decision if it is supported by substantial evidence. Although the plaintiff may disagree with the ALJ's decision to give less than controlling weight to the opinions of Drs. Lee and Alderfer, the record adequately demonstrates that both were made by weighing the relevant factors, and it is simply not the role of this court to re-weigh the conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3$^d$ at 589.

## D.

Finally, to the extent the plaintiff claims that the ALJ "totally ignored" her medical evidence and testimony, either or both, can be read to be an assertion of decisional error at the final sequential step, this claim too is without merit. As he argues, she presented evidence of experiencing significant medication side effects, sleep difficulties, debilitating pain and other functional limitations; however, the ALJ's decision also shows that this evidence was not

12

ignored. In fact, the ALJ's decision expressly shows that he "careful[ly] consider[ed] … the entire record" and that he gave her symptoms credence to the extent they were "consistent with the objective medical evidence." (R.14). As SSR 96-7p directs, no symptom or combination of symptoms can be the basis for a disability determination, "no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable … impairment(s) that could reasonably be expected to produce the symptoms." *Accord* 20 C.F.R. § 416.929.

Moreover, to the extent the ALJ's determination represents either an explicit or implicit discount of the plaintiff's testimony concerning her subjective symptoms, this determination by the ALJ is patently supported by substantial evidence and contrary to no undisputed fact. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (great deference is to be given to an ALJ's credibility determinations, and they are to be assessed only as to whether they are supported by substantial evidence). The plaintiff having suggested no "exceptional circumstances" in this case, the ALJ's credibility determinations "should be accepted by the . . . court." *Id*. (quoting *NLRB v. Air Products & Chemicals, Inc.*, 717 F.2d 141, 145 (4th Cir. 1983); *see also Bieber v. Dep't. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002) ("credibility determinations of an ALJ are virtually unreviewable on appeal"); *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1149 (Fed. Cir. 1997) (reviewing courts "are not in a position to re-evaluate … credibility determinations, which are not inherently improbable or discredited by undisputed fact").

13

**E.**

This recommendation that the Commissioner's final decision be affirmed, however, does not suggest that the plaintiff is totally free of pain and other subjective discomfort or that she does not have medical and mental health issues. On review, the objective medical record, however, simply fails to demonstrate that her condition during the relevant period was of sufficient severity to result in total disability from all forms of substantial gainful employment. The decision in this case for the court to make is "not whether the [plaintiff] is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3$^d$ at 589). Likewise, it is for the province of the Commissioner, not the court, to resolve conflicts in the evidence. *Hays v. Sullivan,* 907 F.2$^d$ 1453, 1456 (4th Cir. 1990).

V.  **Proposed Findings**

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is rational and in all material respects is supported by substantial evidence;

2. The ALJ properly evaluated the plaintiff's impairments at the third, fourth and fifth step of the sequential evaluation;

3. The ALJ's determination to give "little" decisional weight to thetreating source opinions of Dr. Lee is supported by substantial evidence;

4, The ALJ's determination to give "some but not controlling" decisional weight to the treating source opinions of Dr. Alderfer is supported by substantial evidence;

5. The ALJ's credibility determinations were made by him after weighing the relevant factors;

6. The ALJ's determination that the plaintiff had no condition or combination of conditions that met or medically equaled a listed impairment is supported by substantial evidence;

7. The plaintiff's residual functional capacity was appropriately assessed by the ALJ, and it was made in accordance with SSR 96-8p;

8. The ALJ applied the correct legal standards in determining his assessment of the plaintiff's credibility, and his assessment is supported by substantial evidence;

9. The Commissioner met his burden of proving that through the date of the ALJ's decision the plaintiff possessed the residual functional ability to perform work which existed in significant numbers in the national economy;

10. The plaintiff has not met her burden of proving a disabling condition through the date of the ALJ's decision; and

11. All facets of the Commissioner's final decision should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, DENYING the plaintiff's summary judgment motion, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

### VII. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: This 11th day of December 2012.

s/*James G. Welsh*
United States Magistrate Judge

1.